UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **CALVIN THOMAS** | **DOCKET NO. 2:23-cv-0592**<br>**SECTION P** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **KEITH COOLEY** | **MAGISTRATE JUDGE LEBLANC** |

### REPORT AND RECOMMENDATION

Before the court is a Motion to Dismiss filed on November 22, 2023, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure by defendants, Keith Cooley, Ricky Kenon, Krystle Simon and Lt. Seal. Doc. 18. This motion is in response to the complaint filed by plaintiff Calvin Thomas ("Thomas") seeking relief pursuant to 42 U.S.C. § 1983 and for protection of plaintiff's First Amendment rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA). Doc. 1. Thomas filed an opposition to the defendants' motion on January 23, 2024. Doc. 26. The motion is now ripe for review.

The motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For the following reasons, **IT IS RECOMMENDED** that the defendant's Motion to Dismiss (doc. 18) be **GRANTED IN PART** and **DENIED IN PART**.

I.  **BACKGROUND**

At all times pertinent to this case Thomas was confined to the custody of the Louisiana Department of Public Safety and Corrections and housed at Allen Correctional Center ("ACC") in Kinder, Louisiana. Thomas claims to be a practitioner of the Rastafari religion, and he summarizes his complaints against defendants this way:

> I filed said ARP due to the harassment and religious profiling of rastafarians, by Head Warden Cooley, Chaplain Kennon, and asst Warden Simon using color of the law to enforce two non-neutral policies without a legitimate penological objective strategically attacking hair exemption status to deter Rastafarians from growing hair while practicing their faith via (diet, forced church).

Doc. 1, p. 4. Specifically, his Complaint alleges that, in a meeting on or about September 28, 2022, at which Warden Cooley was present, all Rastafarians at ACC were "called upon and informed they were to immediately adhere to new diet (non-meat) regardless, and violators would lose exemption status and forced to cut hair." *Id*. Further, Thomas complains that, on October 12, 2022, all Rastafarians received a memo from Chaplin Kennon, stating that it was mandatory that they attend church service at least 50% of the time or risk losing hair exemption status and, again, be forced to cut their hair. *Id*.

Thomas's first step Administrative Remedy Procedure ("ARP") submission was reviewed by Warden Simon, who denied his request for remedy. *See* doc. 1, att. 2, p. 1. The response was prepared and signed by Lieutenant Seal. *Id*. Thomas sought review of the First Step Response (doc. 1, att. 2, p. 1), and received a Second Step Response that addressed meal options for Rastafarians but did not speak to Thomas's claims of harassment based on the church attendance policy (doc. 1, att. 2, p. 2).

Thomas alleges that the church attendance policy being instituted at ACC is arbitrary and capricious and is implemented to target and deter Rastafarians from growing their hair while practicing their faith. He alleges that the rule violates the First Amendment, because it does not demonstrate a neutral policy, there is no legitimate penological objective, and it does not "effect [sic] prison resources or impact accommodation of asserted rights on prison or inmates." Doc. 1, att. 2, p. 4. Thomas requests the following relief: "[a]n independent external reviewer and federal transparency for objectivity to eliminate defendants impunity," for "said officials [to be] held

accountable," to be "[p]rovided DOC policy regarding hair exemption criteria, eligibility and forfeiture," and monetary relief for compensatory, nominal and punitive damages. Doc. 1, p. 4, ¶V. Finally, Thomas is seeking to be permanently remanded to federal custody to avoid the risk of retaliatory actions for his complaints. Doc. 1, att. 2, p. 6.

## II.     LAW & ANALYSIS

### A.  LEGAL STANDARDS OF REVIEW

#### 1. *12(b)(1) Motion to Dismiss*

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may be treated as either a facial or factual challenge to the court's jurisdiction. *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981) *cert. denied*, 102 S.Ct. 396 (1981). Facial attacks, which question the sufficiency of the pleadings, require the court to consider the allegations in the complaint as true. *See Spector v. L Q Motor Inns, Inc.,* 517 F.2d 278, 281 (5th Cir. 1975). During factual challenges to subject matter jurisdiction, however, courts are allowed to look outside of the pleadings and no presumptive truthfulness attaches to the allegations in the complaint. *Williamson*, 645 F.2d at 413 (citing *Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 844, 891 (3rd Cir. 1977)).

The district court has the ability to dismiss a complaint for lack of subject matter jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413. If dismissal is sought for a jurisdictional defect that centers upon the lack of congressional waiver of the government's sovereign immunity, resolution is never appropriate by way of summary judgment, but must be

resolved by way of a motion to dismiss for lack of subject matter jurisdiction. *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1156-57 (5th Cir. 1981).

### 2. *12(b)(6) Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) governs dismissal of a case for failure to state a claim. The Court should dismiss a complaint if, taking all allegations of material fact as true and construing them in the light most favorable to the nonmoving party, the complaint fails to state a claim entitling the plaintiff to relief. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), the Supreme Court abandoned the then-familiar rubric of *Conley v. Gibson*, 355 U.S. 41, 45 46 (1957), under which a complaint was deemed sufficient "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly* required that a complaint include "[f]actual allegations [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To withstand a motion to dismiss, a complaint "must contain something more… than… a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. at 555. Rather, a complaint must "plausibly" show a valid claim. Id. at 557.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court applied the pleading standards of Rule 8 of the Federal Rules of Civil Procedure, as clarified in *Twombly*, to a *Bivens* case alleging religious discrimination by a post September 11, 2001, immigration detainee. *Iqbal* held that *Twombly*'s plausibility standard is part and parcel of Rule 8's requirement that every complaint "show[…] that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 684; *Twombly*, 550 U.S. at 555. Amplifying *Twombly*'s holding, *Iqbal* emphasized that "Rule 8[…] does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. If the

"allegations are conclusory," they are "not entitled to be assumed true." *Id*. at 681. To determine the adequacy of a Constitutional claim for money damages against a federal officer, conclusory allegations are disregarded, and a court is to ask whether well pled factual allegations plausibly suggest that a defendant personally violated one or more of a plaintiff's clearly established Constitutional rights. *Id*. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief…." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678, citing *Twombly*, 550 U.S. at 555. Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id*. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. *Id*. at 678-69.

  Usually, in considering a motion to dismiss pursuant to Rule 12(b)(6), a district court must limit itself to the face of the complaint including attachments thereto. However, applicable jurisprudence establishes exceptions to this restriction wherein the court may take judicial notice of documents or information which constitute matters of public record when considering a Rule 12(b)(6) motion to dismiss. *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *Haygood v. Begue*, 2014 WL1320152 at 1 (W.D. La. March 31, 2014). The courts may consider documents filed in support of a motion to dismiss under Rule 12(b)(6), without converting the motion to a motion for summary judgment, when these documents are referenced in the complaint and central to the claim. *Taylor v. City of Shreveport,* 798 F.3d 276, 279 & n.4 (5th Cir. 2015); *Kane Enters. v. MacGregor (USA) Inc*., 322 F.3d 371, 374 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

## B.  DISCUSSION

### 1. *Eleventh Amendment Immunity*

The defendants argue that Thomas's claims for monetary damages against them in their official capacities as state employees are barred by the Eleventh Amendment.  Under the Eleventh Amendment of the United States Constitution, a non-consenting state is immune from any lawsuit seeking monetary damages or equitable relief brought in federal courts by her own citizens or by the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651 (1974). Although Congress has the power to abrogate this immunity through the Fourteenth Amendment, it has not done so as to claims for the deprivation of civil rights under 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). The Eleventh Amendment grants a state, or "arm of the state," sovereign immunity from a suit against it in federal court. *Vogt. Bd. Of Comm'rs of Orleans Levee Dist*., 294 F.3d 684, 688-89 (5th Cir. 2002) (citing *Regents of the Uni. Of Cal v. Doe*, 519 U.S. 425, 429 (1997)). Moreover, neither a State, nor its officials acting in their official capacities, are "persons" against whom a claim for money damages might be asserted under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989).  To the extent Thomas is seeking monetary damages against the defendants in their official capacities, such claims are barred by the Eleventh Amendment and should be dismissed.

Thomas, however, also appears to be seeking injunctive relief from the church attendance policy—i.e., he wants the defendants to be prevented from implementing or continuing this policy testing his devoutness to the Rastafari religion. The Fifth Circuit Court of Appeals has noted:

> In *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity. The Court held that enforcement of an unconstitutional law is not an official act because a state can not confer authority on its officers to violate the Constitution or federal law. *See American Bank & Trust Co. of Opelousas v. Dent,* 982 F.2d 917, 920–21 (5th Cir.1993). To meet the *Ex Parte Young* exception, a plaintiff's suit alleging a

> violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect. *See Saltz v. Tennessee Dep't of Employment Sec.,* 976 F.2d 966, 968 (5th Cir.1992).

*Aguilar v. Texas Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998), *cert. denied*, 528 U.S. 851 (1999). In this case, Thomas is seeking to prospectively enjoin defendants, in their official capacities, from enforcing the alleged unconstitutional church attendance policy and the loss of the hair exemption for failing to meet that policy's requirements. At this point in the proceedings, Thomas has adequately alleged a claim for such prospective injunctive relief within the *Ex Parte Young* exception to Eleventh Amendment immunity.

To the extent Thomas seeks monetary relief from the defendants in their official capacities pursuant to § 1983, all such claims are barred by the Eleventh Amendment and should be dismissed for lack of subject matter jurisdiction. *Castro v. Wallace*, No. 21-50909, 2023 WL 3270906, at *1 (5th Cir. May 5, 2023) ("An individual state officer sued in his official capacity for § 1983 money damages is entitled to immunity. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Dismissal of such claims is proper under Rule 12(b)(1) . . . ."). Contrarily, Thomas's claims against defendants in their official capacities seeking prospective injunctive relief are not precluded by sovereign immunity concerns and are within this Court's subject matter jurisdiction. *Id.* ("Claims for declaratory and prospective injunctive relief against such state officers in their official capacities are permissible. *Aguilar v. Texas Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998).").

### 2. *Prison Litigation Reform Act*

Defendants also correctly note that the Prison Litigation Reform Act ("PLRA") precludes a prisoner's claim for compensatory damages where no physical injury is alleged. *See* 42 U.S.C. § 1997e(e); *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) ("Section 1997e(e) applies to all

federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury."). Because Thomas does not allege facts showing that he has suffered a physical injury, his claim for compensatory damages must be dismissed for this additional reason as barred by the PLRA.

   3. *First Amendment*

The First Amendment provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof. U.S. Const., amend I. While prisoners retain their First Amendment rights, including the right to free exercise of religion, they only retain those First Amendment rights which "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417 U.S. 817, 822 (1974). Thus, a prisoner's right to practice his religion may be limited where the prison officials establish that there is a legitimate penological objective. *Id*.; *Cruz v. Beto,* 405 U.S. 319, 322 n.2 (1972) (per curiam); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78 (1987)).

With respect to Thomas's First Amendment claim, a prison policy or practice will not be found unconstitutional if it is reasonably related to a legitimate penological objective of the facility. *Hay v. Waldron*, 834 F.2d 481, 487-87 (5th Cir. 1987). This general statement of the law has been upheld when a regulation prevented a group of Muslim inmates from attending Jumu'ah, the central religious ceremony of the Muslim faith, similar to Christian Sunday services or Saturday services of the Jewish faith. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 360 (1987). This rule has also been applied to regulations that required Rastafarians to cut their hair, even though keeping one's

hair unshorn and unwashed is a tenet of the Rastafari religion. *See Scott v. Mississippi Dept. of Corrections*, 961 F.2d 77 (5th Cir. 1992), and *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995).

*O'Lone*, *Scott* and *Hicks*, however, are not controlling in this case. In each of those cases, the courts were provided specific and legitimate penological concerns sought to be addressed by the policies at issue. Defendants in this matter state only that "[a]ny policy enacted by Allen Correctional was reasonably related to legitimate penological objectives" and offer a generalized reference to "policies designed to preserve internal order, discipline and security." Doc. 18, att. 1, pp. 6-7. But defendants make no effort to explain how a policy of required church attendance to avoid having one's hair cut advances any legitimate penological interest. For this reason, the defendants' Motion to Dismiss, insofar as it seeks to dismiss Thomas's request for injunctive relief for violating his First Amendment free exercise rights, should be denied.

Additionally, in his opposition to the defendants' Motion, Thomas contends the defendants' actions "causes at least nominal damages." Doc. 26, p. 2. "As the Supreme Court and this circuit have emphasized, a party who proves a violation of his constitutional rights is entitled to nominal damages even when there is no actual injury." *Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988); *see also Hanks v. Keith*, No. 1:13-CV-02999, 2016 WL 6989435, at *3 (W.D. La. Sept. 7, 2016), *report and recommendation adopted*, No. 1:13-CV-02999, 2016 WL 6990538 (W.D. La. Nov. 28, 2016) ("Thus, nominal damages are the appropriate award where constitutional rights have been violated but the plaintiff has not sustained, or proven, actual damages."). For these reasons, defendants' Motion also should be denied with respect to Thomas's claim for nominal damages.

4. **RLUIPA**

The Constitution is not the only source for protecting an inmate's right to worship. In fact, the Religious Land Use and Institutionalized Persons Act of 2000, § 2 et seq., 42 U.S.C.A. § 2000cc et seq. ("RLUIPA"), provides more expansive rights than those protected by the Constitution. RLUIPA provides, in relevant part, that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (A) is in furtherance of a compelling governmental interest; and
>
> (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

RLUIPA defines "religious exercise" broadly to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. §2000cc-5(7)(A). Essentially, "RLUIPA prevents government practices that substantially burden the religious exercise of an inmate unless the practice furthers a compelling interest and is the least restrictive means of doing so." *Brown v. Collier*, 929 F.3d 218, 229 (5th Cir. 2019).

a. **Monetary Damages**

RLUIPA does not waive the state's Eleventh Amendment immunity, and accordingly, monetary damages are not available for claims brought against state employees in their official capacities under RLUIPA. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), aff'd sub. nom., *Sossamon v. Texas*, 563 U.S. 277 (2011). Additionally, RLUIPA does not create a cause of action for damages against defendants in their individual capacities. *See Sossamon*, 560 F.3d at 329, 331; *Copeland v. Livingston*, 464 F. App'x 326, 330 (5th Cir. 2012)

(unpublished) (explaining that "RLUIPA does not create a private right of action against individuals for damages.").

Thomas states in his opposition to the defendants' Motion that he "is now aware of regulations and/or restrictions of RLUIPA for monetary damages being barred." Doc. 26, p. 2. However, he believes that the defendants' actions "causes at least nominal damages." *Id*. Nominal damages are also considered to be compensatory in nature, and not an equitable remedy. *Landgraf v. USI Film Prods*., 968 F.2d 427, 431 (5th Cir. 1992). Therefore, Thomas's claim for monetary damages—including nominal damages—under RLUIPA should be dismissed.

### b. *Injunctive Relief*

Thomas also seeks injunctive relief under RLUIPA. First, he asks the Court to enjoin the defendants from enforcing the policy that requires Rastafarians to attend church services at least 50% of the time.[1] The Court should retain plaintiff's claim for injunctive relief as to this claim.

Next, Thomas asks this Court to remand him to federal custody. This claim is not cognizable because the relief that he seeks cannot be granted either through federal habeas corpus or in a Section 1983 civil rights lawsuit. As a general rule, the federal district courts cannot order prisoners to be transferred from state into federal custody because the housing location of prisoners is a matter within executive rather than judicial purview. *Boothe v. Campbell,* 2013 U.S. Dist. LEXIS 111808 (E.D. Tex., July 14, 2013) (citing *United States v. Warren,* 610 F.2d 680, 684-85 (9th Cir. 1980) (holding that district court abused its discretion by ordering prisoner serving state and federal sentences transferred into federal from state custody)). While certain extraordinary

---

[1] Thomas originally also complained he and other Rastafarian inmates were being required to adhere to a vegan diet, regardless of being vegan or not, or risk losing their hair exemption and be forced to cut their dreadlocks. Pursuant to Plaintiff's Exhibit C, attached to his response to the defendants' motion, "a non-pork diet has been added for an alternative for those inmates who practice the Rastafarian religion that eat meat." Doc. 26, att. 1, p. 5. Accordingly, any claim by Thomas for injunctive relief associated with this issue is moot. *See, e.g., Barnes v. Pierce*, 338 F. App'x 373, 376 (5th Cir. 2009). The only remaining possible burden on Thomas's ability to exercise his religion is the religious service attendance requirement.

circumstances may justify a federal district court in ordering state officials to remove prisoners from a particular facility and place them in an institution selected by the officials, *see Streeter v. Hopper*, 618 F.2d 1178, 1182 (5th Cir. 1980), it is doubtful that the court has the authority to order federal prison officials to accept particular state prisoners. *Fisher v. Goord,* 981 F.Supp. 140 (S.D.N.Y. 1997) (holding that federal courts do not have the authority to force federal prison officials to accept state prisoners, and distinguishing *Walker* on the basis that the order in that case was directed to the state officials who had jurisdiction over the prisoner); *Knight v. Livingston*, 2008 U.S. Dist. LEXIS 9743, 2008 WL 380358 (E.D.Tex., February 11, 2008, no appeal taken), citing *Moore v. Schuetzle*, 2006 U.S. Dist. LEXIS 99433 (D.N.D., January 23, 2007) (unpublished) (available on WESTLAW at 2006 U.S. Dist. LEXIS 99433, 2007 WL 201115). In any event, Plaintiff's request for a transfer to federal custody should be denied.

### III. CONCLUSION

For the foregoing reasons,

**IT IS RECOMMENDED** that the defendant's Motion to Dismiss (doc. 18) be **GRANTED IN PART** as to the following aspects of the Plaintiff's claims: (a) claims for monetary damages under § 1983 against defendants in their official capacities; (b) claims for compensatory damages under the PLRA; (c) First Amendment claims for compensatory damages; (d) claims for monetary damages under RLUIPA; and (e) request for transfer and **DENIED IN PART** as to the plaintiff's claims for prospective injunctive relief to prevent defendants' ongoing application of the religious service attendance policy and for nominal damages for violation of his First Amendment right to free exercise of his religion.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to

file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

    THUS DONE AND SIGNED in chambers this 27th day of September, 2024.

_____
THOMAS LEBLANC
UNITED STATES MAGISTRATE JUDGE