**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

**CALVIN THOMAS #532630**                    **CASES NO. 2:23-CV-00592 SEC P**

**VERSUS**                                   **JUDGE JAMES D. CAIN, JR.**

**KEITH COOLEY ET AL**                       **MAGISTRATE JUDGE LEBLANC**

## REPORT AND RECOMMENDATION

Before the court is a Motion for Summary Judgment filed on June 13, 2025, pursuant to Rule 56 of the Federal Rules of Civil Procedure by defendants Warden Keith Cooley, Krystle Simon, Ricky Kennon, and Lt. Myranda Seal (collectively referred to as "the Defendants"). This motion was filed in response to the original complaint (doc. 1) filed pursuant to 42 U.S.C. § 1983 by plaintiff Calvin Thomas ("Thomas"). Doc. 44. Thomas filed an Opposition to the motion. Doc. 47. The Defendants filed a Reply to Thomas's Opposition. Doc. 48.

This motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For the following reasons, **IT IS RECOMMENDED** that the Defendants' Motion for Summary Judgment (doc. 44) be **GRANTED**.

### I.     BACKGROUND

Thomas filed the instant suit on May 3, 2023. Doc. 1. At all times pertinent to this case, Thomas was confined to the custody of the Louisiana Department of Public Safety and Corrections and housed at Allen Correctional Center ("ACC") in Kinder, Louisiana. Thomas claims to be a practitioner of the Rastafari religion, and he summarizes his complaints against the Defendants this way:

> I filed said ARP due to the harassment and religious profiling of rastafarians, by Head Warden Cooley, Chaplain Kennon, and asst Warden Simon using color of the law to enforce two non-neutral policies without a legitimate penological objective strategically attacking hair exemption status to deter Rastafarians from growing hair while practicing their faith via (diet, forced church).

Doc. 1, p. 4. Specifically, his Complaint alleges that, in a meeting on or about September 28, 2022, at which Warden Cooley was present, all Rastafarians at ACC were "called upon and informed they were to immediately adhere to new diet (non-meat) regardless, and violators would lose exemption status and forced to cut hair." *Id.* Further, Thomas complains that, on October 12, 2022, all Rastafarians received a memo from Chaplin Kennon stating that it was mandatory that they attend church service at least 50% of the time or risk losing hair exemption status and, again, be forced to cut their hair. *Id.*

Thomas's hair was never cut while at ACC. *See* doc. 44-9, p. 3, Calvin Thomas Admissions and Responses to Interrogatories at Request for Admission No. 1. Thomas admits that he stopped attending Rastafarian services in December 2023. *Id.*, at Request for Admission No. 2.

No ACC corrections staff, including Chaplain Ricky Kennon, Warden Keith Cooley, Assistant Warden Krystle Simon, and Lieutenant Myranda Seal, has enforced any of the challenged policies against Thomas. *Id.* at Nos. 1, 2, 3.

No ACC corrections staff, including Chaplain Ricky Kennon, Warden Keith Cooley, Assistant Warden Krystle Simon, and Lieutenant Myranda Seal, has forcibly subjected Thomas to a haircut. *Id.* at No. 1.

No ACC corrections staff, including Chaplain Ricky Kennon, Warden Keith Cooley, Assistant Warden Krystle Simon, and Lieutenant Myranda Seal, has forced Thomas to attend

Religious Services/Church Services.  Thomas admits he stopped attending Rastafarian services in December 2023.  *Id*. at No. 3.

Thomas's first step Administrative Remedy Procedure ("ARP") submission was reviewed by Warden Simon, who denied his request for remedy.  *See* doc. 1, att. 2, p. 1.  The response was prepared and signed by Lieutenant Seal.  *Id*.  Thomas sought review of the First Step Response (doc. 1, att. 2, p. 1) and received a Second Step Response that addressed meal options for Rastafarians but did not speak to Thomas's claims of harassment based on the church attendance policy (doc. 1, att. 2, p. 2).

Thomas alleges that the church attendance policy being instituted at ACC is arbitrary and capricious and is implemented to target and deter Rastafarians from growing their hair while practicing their faith. He alleges that the rule violates the First Amendment, because it does not demonstrate a neutral policy, there is no legitimate penological objective, and it does not "effect [sic] prison resources or impact accommodation of asserted rights on prison or inmates."  Doc. 1, att. 2, p. 4.  Thomas requests the following relief: "[a]n independent external reviewer and federal transparency for objectivity to eliminate defendants impunity," for "said officials [to be] held accountable," to be "[p]rovided DOC policy regarding hair exemption criteria, eligibility and forfeiture," and monetary relief for compensatory, nominal and punitive damages.  Doc. 1, p. 4, ¶V.  Finally, Thomas is seeking to be permanently remanded to federal custody to avoid the risk of retaliatory actions for his complaints.  Doc. 1, att. 2, p. 6.

On August 1, 2023, Magistrate Judge Kathleen Kay recommended that all claims against DPSC Secretary James LeBlanc be dismissed.  Doc. 4.  The Court adopted that recommendation on September 12, 2023.  Doc. 7.

On November 22, 2023, the remaining Defendants moved to dismiss the remainder of Plaintiff's claims for lack of subject matter jurisdiction and for failure to state a claim.  Doc. 18. Specifically, the Defendants argued they were entitled to sovereign immunity for (1) the claims for monetary relief under § 1983 against the Defendants in their official capacity and (2) all claims for monetary relief under RLUIPA. *Id*.; doc. 18-1.  The Defendants also argued that Thomas failed to state a cause of action under § 1983 because Thomas's rights were not violated and so the Defendants are entitled to qualified immunity. They also argued Thomas failed to plead a physical injury so, under the PLRA, he is not entitled to compensatory damages. *Id*.

On September 27, 2024, the undersigned recommended that the Motion to Dismiss be granted in part and denied in part.  Doc. 28.  The Court adopted the Report and Recommendation in its Judgment dated October 21, 2024.  Doc. 30.  Ultimately, all claims were dismissed except the following claims, which are the subject of this motion:

1. Thomas's 42 U.S.C. § 1983 claim for monetary relief against the Defendants, in their individual capacity;

2. Thomas's 42 U.S.C. § 1983 claim for injunctive relief against the Defendants in their official capacities; and

3. Thomas's RLUIPA claim for injunctive relief.

## II.    POLICIES AT ISSUE

In December 2020, Allen Correctional Center had in place ACC policy No. 02-08-004. *See* doc. 44-2, ACC Policy for Religious Services, attached as Exhibit A to Defendants' Motion for Summary Judgment.  ACC Policy No. 02-08-00424 was revised in December 2022 (doc. 44-3) and in September 2023 (doc. 44-3).  ACC policy No. 02-08-004 was adopted pursuant to the State of Louisiana Department of Public Safety and Corrections Department Regulation No. PS-E-1.

*See* doc. 44-5, DPSC Regulation for Religious Services, attached as Exhibit B to Defendants'
Motion for Summary Judgment.

State of Louisiana Department of Public Safety and Corrections Department Regulation
No. PS-E-127 became effective on December 12, 2018.   DPSC Regulation No. PS-E-1 provides
for Religious Faith-Based Programs and Services in subsection 7.G.(1) which provides that each
Warden shall ensure that Offenders have the opportunity to participate in practices of their
religious faith that are deemed essential by the faith's governing judicatory, limited only by
documentation showing threat to the safety of persons involved in the practice of the faith or that
the practice itself disrupts order in the institution.  *Id*. DPSC Regulation No. PS-E-1 subsection
7.G.(2) provides that in determining what constitutes legitimate religious practices, the Warden or
his designee shall consider whether there is a body of literature stating religious practices that
support the practices and whether the practices are recognized by a group of persons who share
common ethical, moral, or intellectual views.  *Id*.

ACC Policy Offender Posted Policy #11 (doc. 44-6, ACC Grooming Policy, attached as
Exhibit C to Defendants' Motion for Summary Judgment) became effective on June 3, 2015.
DPSC Regulation Offender Posted Policy #11 (doc. 44-7, DPSC Grooming Policy, attached as
Exhibit D to Defendants' Motion for Summary Judgment) became effective on August 25, 2021.
The DPSC Grooming Policy, with respect to an offender's grooming of their head hair, provides,
"an offender's appearance and hair style or length must not conflict with institutional requirements
for security, safety, identification, hygiene, and all valid penological goals. Controls are necessary
to prevent incidents such as the introduction, concealment, and trafficking of contraband; the
ability to easily change one's appearance both in prison and in the event of an escape; and the
ability to have a gang or group identity, which is destabilizing in a prison environment." *Id*.  The

DPSC Grooming Policy also provides that, "C. An offender's hair shall be groomed in a manner as to prevent the concealment of contraband and to limit the offender's ability to change his appearance both in prison and in the event of an escape. An offender's hairstyle may not interfere, delay, or create difficulty in conducting search procedures. D. Hair, facial hair, and sideburns of a length and style which can be used to conceal contraband and which are not easily inspected are prohibited…." *Id*. An offender at ACC who wishes to avoid compliance with the DPSC and/or ACC Grooming Policies may request a "Religious Exemption" by completing Form PS-E-1-a (doc. 44-8, Religious Exemption, attached as Exhibit E to Defendants' Motion for Summary Judgment).

The Religious Exemption provides at subsection 3, "I understand that if I am granted this exception: a. I agree to abide by the Louisiana Department of Public Safety and Corrections regulations, policies, and procedures in order to protect Departmental staff and other offenders; b. I agree to remain actively engaged in my religion at least 50 percent of the time on a monthly basis or else forfeit my right to a religious exemption; and c. The Head Warden of my institution may withdraw the religious exemption if I abuse it in a manner that undermines the prison's compelling interests." *Id*.

## III.   LAW & ANALYSIS

### A.  Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2553 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by

identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id*. Ordinarily, summary judgment may not be granted merely because no opposition has been filed. *See Luera v. Kleberg Cnty., Tex.*, 460 Fed. App'x 447, 449 (5th Cir. 2012) (per curiam).

Once the movant makes this showing, the burden then shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986). The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law. *Celotex Corp.*, 106 S.Ct. at 2553. There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014). Furthermore, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000).  However, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 106 S.Ct. at 2511.

### B.  The Defendants are entitled to qualified immunity from Plaintiff's § 1983 claims for monetary damages.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *DeMarco v. Bynum*, 50 F.4th 479, 483 (5th Cir. 2022) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015)) (additional citation

omitted).  The United States Supreme Court has repeatedly stressed that the immunity issue must be resolved at the earliest possible stage of the litigation since it entails not merely a defense to liability but is instead immunity from suit and an entitlement not to stand trial or face the burdens of litigation.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Saucier v. Katz*, 553 U.S. 194, 202 (2001). The Plaintiff bears the burden to "negate qualified immunity." *Estevis v. Cantu*, 134 F.4th 793, 798 (5th Cir. 2025) (*citing King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) (when qualified immunity is asserted, the burden shifts to the plaintiff to "show that the defense is not available")). To overcome the immunity defense, Thomas "must show both (1) that the officials violated [his] statutory or constitutional right and (2) that right was clearly established at the time of the challenged conduct." *Williams v. City of Yazoo, Mississippi*, 41 F.4th 416, 422 (5th Cir. 2022) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)).

### 1.  Plaintiff's constitutional rights were not violated.

The Court found that Thomas pled a plausible violation of his First Amendment rights via "defendants' ongoing application of the religious service attendance policy."  Doc. 28, p. 9, 12. However, Thomas cannot merely rest on his pleadings to overcome the qualified immunity defense raised in the instant motion for summary judgment. *Johnson v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.,* 90 F.4th 449, 455 (5th Cir. 2024) ("In opposing summary judgment, a party 'may not rest on mere conclusory allegations or denials in its pleadings.'") (quoting *Smith v. Regional Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016)).  He must offer evidence sufficient to raise a genuine issue of material fact for trial.

Thomas requests nominal damages for the past violation of his First Amendment rights when the religious service attendance policy was supposedly enforced against him.  Doc. 28, p. 9, 12.  According to Thomas, that policy required attendance at 50% of available Rastafari religious

services to avoid losing the religious exemption and risk being forced to cut his hair.  *See* doc. 44-9, Calvin Thomas Admissions and Responses to Interrogatories at Interrogatory No. 3; *see also* Plaintiff's Opposition to Defendants' Summary Judgment, doc. 47, p. 1 ("Plaintiff Calvin Thomas opposes Defendants' Motion for Summary Judgment and ascertains his first amendment rights were violated by the implementation of unconstitutional policy [mandatory 50% church attendance to avoid haircut].")

Thomas was granted a religious exemption in 2021, while at the David Wade Correctional Center.  Doc. 44-9.  The Defendants represent that this exemption was never taken away, and Thomas puts forth no evidence to refute this contention. Further, Thomas admitted that "[his] hair wasn't cut period." Doc. 44-9, p. 3.  And he "stopped attending Rastafarian church services [in] Dec[ember] 2023." *Id*.

While Thomas argues in his Opposition to the Defendants' Motion for Summary Judgment that his constitutional rights were violated because the policies at issue are not reasonably related to a legitimate penological interest (doc. 47, pp. 3-4), he puts forth no evidence to dispute the Defendants' argument that the policy was never enforced against the Plaintiff.

Furthermore, in their Reply to Plaintiff's Opposition, the Defendants introduce the testimony of Defendant Chaplain Ricky Kennon.  Doc. 48-1.  In his affidavit, Chaplain Kennon states that no ACC Corrections Staff, and specifically including the individual Defendants herein, have ever enforced the policies at issue against this Plaintiff.  *Id*.

Therefore, without any evidence of the enforcement of the policies (i.e., his hair being cut and/or forcible attendance of religious services) by the individual Defendants, his claim that the Defendants should not be entitled to qualified immunity is defeated.  *See Estrada v. Nehls*, 524 F.Supp.3d 578, 590 (S.D. Tex. Mar. 9, 2021) (assuming an unconstitutional policy existed, the

plaintiff's claims still failed because he did not show the policy caused a violation of his constitutional rights); *see also Pappillion v. La. Dep't of Pub. Safety & Corr.*, 2022 U.S. Dist. LEXIS 55505 (M.D. La. March 28, 2022) ("Though unconstitutional practices existed, to succeed herein, Pappillion must be able to demonstrate that the unconstitutional practices *caused* a constitutional violation in his particular case, *i.e.*, Pappillion must demonstrate that an actual constitutional violation, here, deliberate indifference, resulted from the practices. Because the summary judgment evidence demonstrates that deliberate indifference did not exist in Pappillion's particular case, much less result from unconstitutional practices, his claims must fail.")

### 2. *Defendants' conduct was not unlawful under clearly established law.*

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. at 202). "The Supreme Court has 'repeatedly told courts ... not to define clearly established law at a high level of generality.' Instead, 'the clearly established law must be 'particularized' to the facts of the case.'" *Wetherbe v. Texas Tech Univ. Sys.*, 138 F.4th 296, 301 (5th Cir. 2025) (cleaned up) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015); *White v. Pauly,* 580 U.S. 73, 79 (2017)). To overcome this element of the qualified immunity defense, it is not enough for the plaintiff to show that his constitutional rights were violated; he must prove that each defendant's conduct violated clearly established law. Each defendant's actions must be examined independently to determine his entitlement to qualified immunity. *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (citing *Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007)); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens*

and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")

In his Opposition, Thomas argues that the Defendants are not entitled to qualified immunity because their conduct was unlawful under clearly established laws.  Doc. 47, p. 4.  In support of this argument, Thomas states that the actions of Defendant Warden Cooley[1], Defendant Chaplain Kennon[2] and Defendant Simon[3] are not reasonably related to legitimate penological interests. (He makes no mention of any conduct by Defendant Lieutenant Seal.) However, Thomas failed to produce any evidence, whatsoever, showing that each individual Defendant engaged in conduct that violated clearly established law

Again, "[Thomas's] hair wasn't cut period" (*see* doc. 44-9, p. 3) and he has provided no evidence that he was forced to attend any unwanted religious services. Absent the underlying constitutional violation, Thomas cannot meet his burden of showing that each Defendant's actions violated clearly established constitutional law.

### C. Plaintiff lacks standing to pursue claims for injunctive relief against the Defendants in their official capacities and his claims for injunctive relief are otherwise barred by the Eleventh Amendment.

As set forth above, Thomas admitted that "[his] hair wasn't cut period" and he "stopped attending Rastafarian church services [in] Dec[ember] 2023."  Doc. 44-9, p. 3.  There is no evidence that the challenged policy was ever enforced against him. Thomas therefore lacks Article III standing to pursue a claim for injunctive relief against the Defendants.

Article III of the United States Constitution limits the jurisdiction of federal courts to actual cases or controversies. U.S. Const. Art. III. "'No principle is more fundamental to the judiciary's

---

[1] Doc 47 at p. 4, para 2 ("Defendant Warden Cooley plead he instructs all staff at ACC to adhere to DPSC regulations, however, forced church policy isn't a DPSC regulation.").
[2] *Id*. (("[D]efendant Kennon sent email championing illegal policy.")
[3] *Id*. ("[D]efendant Simon screened and responded to first step ARP but neglected her duties to intervene as required.")

proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "A proper case or controversy exists only when at least one plaintiff 'establish[es] that he ha[s] standing to sue.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Raines*, 521 U.S. at 818; *Dep't of Com. v. New York,* 588 U.S. 752, 766 (2019)).  "The plaintiff bears the burden of establishing standing as of the time he brought the lawsuit and maintaining it thereafter." *Id.* (cleaned up).  Furthermore, "standing is not dispensed in gross." *Id.* at 61 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)).  That is, "plaintiffs must demonstrate standing for each claim that they press" against each defendant, "and for each form of relief that they seek." *Id.*

Standing is "an indispensable part of the plaintiff's case" so he must prove each element "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992) (citation omitted). "Where, as here, the parties have taken discovery, the plaintiff cannot rest on 'mere allegations,' but must instead point to factual evidence." *Murthy*, 603 U.S. at 58 (citing *Lujan*, 504 U.S. at 561).

Jurisprudence has established that the "irreducible constitutional minimum" of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  *Spokeo*, 578 U.S. at 337 (internal citations omitted).

The State's sovereign immunity and the Eleventh Amendment to the U.S. Constitution further limit federal jurisdiction. This Court previously held that the Eleventh Amendment provides non-consenting states with immunity "from any lawsuit seeking monetary damages or

equitable relief brought in federal courts . . ." Doc. 28, p. 6 (citing *Edelman v. Jordan*, 415 U.S. 651 (1974)).  In *Ex parte Young*, the Supreme Court recognized an exception to the State's sovereign immunity.  209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).  The Supreme Court held that the Eleventh Amendment does not bar a suit if it is brought (1) to correct an ongoing violation of the Constitution or a federal right, (2) is against individual persons in their official capacities as agents of the state, and (3) the relief sought [is] declaratory or injunctive in nature and prospective in effect.   Doc. 28, p. 6. (quoting *Aguilar v. Texas Dep't of Crim. Just,* 160 F.3d 1052, 1054 (5th Cir. 1998) (internal citations omitted)).

"[C]ourts recognize the significant overlap between Article III jurisdiction, *Ex parte Young,* and equitable relief." *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017) (citing *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 n.5 (5th Cir. 2015) (equating and distinguishing *Ex parte Young's* requirements with the "Article III minimum for standing to request an injunction")).

Thomas's constitutional rights were not and are not being violated so he fails the injury-in-fact element of standing and the ongoing-violation element of *Ex parte Young*. "Whether Plaintiffs have alleged ongoing constitutional violations is a central question of both the Article III standing analysis and the *Ex parte Young* analysis in this case." *James v. Hegar*, 86 F.4th 1076, 1081 (5th Cir. 2023). Article III jurisprudence will therefore inform the Court's analysis of the ongoing-violation element of *Young*. *Id*. "An injury-in-fact constitutes 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Wendt v. 24 Hour Fitness USA, Inc.,* 821 F.3d 547, 550 (5th Cir. 2016) (quoting *Lujan*, 504 U.S. at 560).

In the matter before this Court, Thomas candidly admits that the policy has never been enforced against him. His hair "wasn't cut period" and he has not attended religious services since December 2023.  Doc. 44-9, p. 3.  Considering those admissions, Thomas cannot meet his burden of proving the injury-in-fact element of the standing inquiry or the ongoing-violation element of *Ex parte Young*. Furthermore, the Defendants represent that the challenged policy has not been enforced at ACC as to any Rastafarian offender. Rastafarian offenders are neither forced to attend religious services nor forcibly subjected to a haircut for a failure to attend a certain percentage of services. To have standing to request prospective injunctive relief, the Plaintiff must demonstrate "continuing harm or a real and immediate threat of repeated injury in the future." *James*, 86 F.4th at 1081 (quoting *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992)). "The threat of future injury must be 'certainly impending'; mere allegations of possible future injury will not suffice." *Id*. (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013)).  And where, as here, the plaintiff brings a pre-enforcement challenge to a policy or rule, the plaintiff must show that "the threat of future enforcement of the challenged policies is substantial."  *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 781 (5th Cir. 2024) (cleaned up) (quoting *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020)). Considering the policy has not been enforced as to Thomas or any other Rastafarian offender at ACC, the Defendants argue, and the Court agrees, that Thomas cannot prove an actual or imminent injury-in-fact as required to establish Article III standing or the *Ex parte Young* exception to sovereign immunity.

The traceability element of standing correlates to the requirement of *Ex parte Young* that the named defendants have some connection with enforcement of the challenged policy. Supreme Court precedents explain that traceability requires "a causal connection between the injury and the

conduct complained of.  In other words, the injury has to be 'fairly ... trace[able] to the challenged action of the defendant.'"  *California v. Texas*, 593 U.S. 659, 692–93 (2021) (cleaned up) (quoting *Lujan*, 504 U.S. at 560).  For purposes of *Ex parte Young*, Thomas must show that the named state officials have some causal connection with enforcement of the challenged provision.  *Okpalobi v. Foster,* 244 F.3d 405, 411–12 (5th Cir. 2001).

In his Statement of Issues, Thomas alleges that Warden Cooley "instructs all staff at Allen Correctional Center to adhere to DPSC regulations."  Doc. 42, p. 2.  He alleges Warden Simon should know of these policies in light of her job duties but she also failed to properly respond to his ARP.  *Id*.  He also alleges Chaplain Kennan notified the offenders of the policy (which was never thereafter enforced).  *Id*. at p. 1.  As set forth above, because the policy was never actually enforced, Thomas is unable to allege, or provide any evidence to establish, that any Defendant is connected to enforcement of the policy.   Therefore, Thomas fails the traceability element, because he has not causally connected any action of any Defendant to his alleged harm.

Finally, the Court finds that a decision favorable to Thomas will not "relieve a discrete injury" to him.  *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp*., 851 F.3d 507, 514 (5th Cir. 2017) (quoting *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982)).  As established by the evidence submitted by the Defendants in support of this motion, Thomas has been given accommodations based on his religious beliefs and practices. Specifically, he has an exemption from haircuts and has been given a special diet. An injunction to stop enforcement of the policy, *which is not being enforced*, will not affect Thomas.

In conclusion, the undersigned finds that Thomas lacks standing to pursue injunctive relief under both 42 U.S.C. § 1983 and RLUIPA. Nonspecific, vague, conclusory, and unsupported statements that the Defendants are "continuing to engage in unlawful conduct" do not support

federal jurisdiction. *James*, 86 F.4th 1076 (citations omitted). Thomas has not been injured, and the evidence indicates he will not be injured in the future. He therefore lacks standing and fails to show the elements of *Ex parte Young*. The claims for injunctive relief should therefore be dismissed without prejudice for lack of subject matter jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS RECOMMENDED** that the defendants' Motion for Summary Judgment (doc. 44) be **GRANTED** and that the action be **DISMISSED WITH PREJUDICE.**

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in chambers this 3rd day of March, 2026.

_____
THOMAS P. LEBLANC
UNITED STATES MAGISTRATE JUDGE

-16-